**TIDEWATER OIL COMPANY, a Corporation, Plaintiff,**

v.

**Ray PENIX, Defendant.**

**Ray Alfred PENIX and Wauneta Penix, Plaintiffs,**

v.

**TIDEWATER OIL COMPANY, a Corporation, Defendant.**

Civ. Nos. 5220–5225.

United States District Court
E. D. Oklahoma.

Nov. 20, 1963.

Gable, Gotwals & Hays, Tulsa, Okl., Cloy D. Monzingo, Houston, Tex., for Tidewater Oil Co.

Luton, Lunn & Ferguson, Muskogee, Okl., for Ray Penix.

BOHANON, District Judge.

Upon the evidence presented, argument of counsel, and Briefs, the Court makes the following Findings of Fact and Conclusions of Law.

### Findings of Fact

1. That Ray Alfred Penix and Wauneta Penix, husband and wife, residents of Muskogee County, Oklahoma (hereinafter referred to as "Penix"), are the owners of the surface of the following described property in Muskogee County, Oklahoma, to-wit:

> The West Half of the Southeast Quarter (W/2 SE/4) of Section 5, Township 14 North, Range 18 East, Muskogee County, Oklahoma,

having acquired the same in 1956.

2. That Tidewater Oil Company, a Delaware corporation with its principal place of business in California (hereinafter referred to as "Tidewater"), is the owner of a valid oil and gas lease on said property dated September 7, 1912, for the purpose of mining and operating for oil and gas under an agreement to pay for damages caused by it to growing crops on said land; that said lease, along with other leases in this area, is being operated as a waterflood project using secondary methods of oil production.

3. That the defendant Penix contends that waterflooding was unknown to the oil industry and was not contemplated between the lessor and lessee in the Oil and Gas Lease executed on the 7th day of September, 1912, and that the operations on the leased premises for waterflooding secondary recovery of oil and gas amounted to an enlargement of the original Oil and Gas Lease to the extent that the defendant Penix had larger and greater rights than otherwise would be true in oil and gas leases executed between lessors and lessees where waterflooding was a common practice and in the contemplation between lessor and lessee. The Court finds that in 1912 waterflooding was not known and was not a common practice in the oil industry and therefore could not have been in the contemplation of lessor and lessee on the date of the execution of the Oil and Gas Lease in question. The Court finds that in 1956, the year the defendant Penix acquired the surface to the premises in question, secondary recovery of oil by waterflooding was a common practice in the State of Oklahoma. That notwithstanding the fact that waterflooding was not a common practice for secondary recovery of oil in 1912, the Oil and Gas Lease in question did provide for operations broad enough to allow waterflooding, inasmuch as the Oil and Gas Lease provided in part as follows:

> "Parties of the first part (lessor) * * * have granted, demised, leased and let, and by these presents do grant, demise, lease and let unto the said second party, its successors or assigns, for the sole and only purpose of mining and operating for oil and gas, and of laying pipe lines and of building tanks, power stations and structures thereon to produce and take care of said products, * * * *"

The Lease further provided:

> "It is agreed that this lease shall remain in force for the term of five years from this date (7 September 1912), and as long thereafter as oil or gas or either of them is produced

therefrom by the party of the second part, its successors or assigns."

The Court finds that by the general terms of the original Oil and Gas Lease, the Lessee not only had a right, but had a duty, to waterflood the premises for the recovery of oil for the benefit of the mineral owners should it be determined by a prudent operator to be profitable. The Court further finds that even though secondary recovery by way of waterflooding was not specifically agreed to between the parties in 1912, the Lease itself is broad enough to authorize the lessee to waterflood the premises for secondary recovery of oil and that such operations must be carried on in a manner not to use any more of the surface than is reasonably necessary.

4. The Court finds that in the early operation of the Oil and Gas Lease in question a number of wells had been drilled and produced for a period of time and thereafter plugged. That the plugging of approximately nine wells was performed in such a way and manner as to probably permit water which was injected into the input wells under pressure to travel up the improperly plugged wells and pollute subsurface fresh water and permit pollution of the surface of the premises by way of salt water and/or oil. That to remedy this situation, it was necessary to clean out the old plugged holes and replug the wells with cement plugs and other modern methods as prescribed by the Corporation Commission of the State of Oklahoma, a state agency having charge of such matters.

5. That Penix refused to allow Tidewater to enter said premises to carry on said waterflood project by washing down and replugging nine old wells, drilling injection wells, and performing other operations which are necessary to such project, thereby endangering the success of the whole project and threatening irreparable injury and loss to Tidewater greatly in excess of $10,000; whereupon, the Court entered a temporary injunction against Penix and the agents, servants, and employees of Penix, enjoining them from obstructing, interfering with, or preventing said operations during the pendency of this suit.

6. That under the temporary injunction issued herein, Tidewater has replugged the nine old abandoned wells, drilled an additional producing well, built necessary roadways, and laid necessary pipelines; that such work was performed in the usual and customary manner according to methods and standards used by reasonable and prudent operators, with only such part of the surface of said land being used as was reasonably necessary; and that Tidewater was not guilty of either negligence or use of more surface than was reasonably necessary in connection with said operations.

7. That Tidewater contemplates the drilling of one additional injection well and the construction of necessary roadways and pipelines appurtenant thereto.

8. Although the waterflood method of secondary recovery was not a common practice at the time the lease here involved was executed, nevertheless, the terms of the lease grant to the lessee the right to mining and operating for oil and gas. The granted right must necessarily include the right to use so much of the surface as may be required reasonably to effectuate the purposes of the grant, including the use of secondary recovery methods of extracting minerals.

9. That no crops were growing on said land at the time of Tidewater's operations; that there was pasture grass standing thereon which was dead at the time; that the surface area used in connection with the replugging and washing down operation has been put back in as good a condition as it was in prior to Tidewater's operations; and that the surface area used in the replugging and washing down operation has been fertilized and sodded and planted with grass; that there has been no appreciable loss of grass; and that any prospective depreciation of the land is purely speculative.

10. That Penix has suffered no damage by reason of the operations of Tidewater on the lease, either to the present

value of the real estate or to growing crops; that there is no indication of future loss in value to the land which may result from the present or proposed use of the land by Tidewater Oil Company and that Tidewater did not damage any fences and did not allow any cattle to escape by reason of negligence and did not cause Penix to sell any cattle.

11. The Court finds that Tidewater was not negligent in drilling the two existing wells, did not use more of the surface than was reasonably necessary, did no damage to growing crops, and present or prospective value of the land did not depreciate in value because of said operations.

### Conclusions of Law

The Court concludes as a matter of Law:

1. That this case was properly brought in this Court, and the Court has jurisdiction of the subject matter and of the parties.

2. That the right of mining and operating for oil and gas as contemplated by the terms of the lease involved herein includes the right of conducting secondary recovery methods, including but not limited to the necessary reworking, washing down, and replugging of any old wells, and the drilling of new producing or injection wells, the laying of the necessary pipelines, and the building of the necessary roads.

3. That the conducting of secondary recovery operations does not constitute either an unreasonable and unnecessary use of the land by the lessee and does not subject the lessee to any greater liability for damages than primary recovery operations.

4. That in the absence of use of more of the land than is reasonably necessary and in the absence of negligence in conducting its operations, Tidewater is liable for damages only to the extent expressly provided in the lease, such being liability for damages caused to growing crops.

5. That since no more of the surface was used than was reasonably necessary, since Tidewater was not negligent in its operations, and since no damage was done to growing crops, Penix is not entitled to any recovery by reason of any matters contained in the Cross-Petition or otherwise.

6. That since no more of the surface was used in connection with the drilling of the two producing wells than was reasonably necessary, since Tidewater was not guilty of any negligence in connection with the drilling of said wells, and since no damages were done to growing crops in connection with the drilling of said wells, Penix is entitled to no recovery in connection with said operations.

7. That since no damages will be done to growing crops in connection with the drilling of the contemplated injection well and necessary roads and pipelines appurtenant thereto, Penix is entitled to no recovery for crop damages in connection with said operation.

### JUDGMENT

Upon the Findings of Fact and Conclusions of Law heretofore made herein,

It is ordered, adjudged and decreed as follows:

1. That Tidewater Oil Company is the owner of a valid and subsisting oil and gas lease providing for the mining and operating for oil and gas upon the following-described property, to-wit:

The West Half of the Southeast Quarter (W/2 SE/4) of Section 5, Township 14 North, Range 18 East, Muskogee County, Oklahoma,

the surface of which property is owned by Ray Alfred Penix, which lease is dated the 7th day of September, 1912; and that said lease entitles the owner thereof to mine and operate for oil and gas, including the right of secondary recovery methods and including water-flooding.

2. That the defendants, Ray Alfred Penix and Wauneta Penix, their agents, servants, and employees, are hereby permanently enjoined from obstructing, interfering with, or preventing Tide-

water Oil Company from going on the leased premises in exercise of its rights under the lease or in any other manner hindering, delaying or preventing Tidewater in the exercise of its rights thereunder, and particularly in the exercise of its rights to operate said property for oil and gas, using secondary recovering methods, including waterflooding, and from interfering with the building of the necessary roads and the drilling of the necessary producing and injection wells.

It is further ordered, adjudged and decreed by the Court that the recovery of any damages by Ray Alfred Penix and Wauneta Penix as claimed in their counterclaim or for damages by reason of the operations of the Tidewater Oil Company are hereby denied and the costs of these actions are assessed against Ray Alfred Penix and Wauneta Penix.

It is further ordered that the Court retain jurisdiction of this matter to hear and determine any problems that may develop as between the parties.